UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER M. HORNES,

      Petitioner,

v.                                       Case No.  3:16cv121/LC/CJK

FLORIDA DEPARTMENT OF
CORRECTIONS SECRETARY, and
MELINDA N. COONROD,
Chairman, Florida Commission on
Offender Review,

      Respondents.
_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent Coonrod filed an answer, submitting relevant portions of the state court record. (Doc. 12).[1] Petitioner replied. (Doc. 14). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the

---

[1] Respondent FDC Secretary Jones filed a limited response requesting that the Florida Commission on Offender Review be added as a party. (Doc. 9).

Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On February 25, 1993, petitioner was convicted of attempted first degree murder in Polk County Circuit Court Case No. 92-CF-3197, and was sentenced to 22 years in prison. (Doc. 12, Ex. 3A).[2] After serving less than half his sentence, petitioner was released from confinement to conditional release supervision on October 25, 2002, pursuant to Fla. Stat. § 947.1405. (Ex. 3B). The terms and conditions of petitioner's supervision are set forth in the Certificate of Conditional Release and Terms and Conditions of Supervision. (Ex. 3B).

On June 26, 2013, a warrant to arrest/retake petitioner was issued based on charges that he violated the conditions of his conditional release by: (1) using or possessing crack cocaine on or about June 21, 2013, in violation of Conditions 4(b) and 7; and (2) posting bail or accepting pre-trial release after he was arrested on June 21, 2013 (for felony possession of cocaine), without first securing the permission of his Conditional Release Officer, in violation of Condition 2(c). (Exs. 3D, 3G). On

---

[2] All references to exhibits are to those provided at Doc. 12, unless otherwise noted.

July 3, 2013, an addendum to the violation report charged petitioner with two additional violations, namely, violating Condition 2(a) by changing his residence without first securing the permission of his Conditional Release Officer, and violating Condition 3 by falsely reporting to his Conditional Release Officer in his July 1, 2013, Written Monthly Report (WMR) that he had not been arrested or had contact with law enforcement during the past month. (Ex. 3F). Petitioner was provided notice of all charges and elected to postpone his conditional release violation hearing until disposition of the new felony charge for possession of cocaine. (Ex. 3E).

On September 26, 2013, petitioner's new criminal charge for possession of cocaine was nolle prossed. (Ex. 3G). Petitioner was again notified of the pending conditional release violation charges and of his rights in the violation proceeding. (Ex. 3F). Petitioner elected to be provided a violation hearing, waived the right to be represented by counsel, and expressed his intent to deny all the violations except the violation concerning posting bail or accepting pre-trial release. (*Id.*).

Petitioner's conditional release violation hearing took place on October 15, 2013, at the Escambia County Jail. (Ex. 3G). Petitioner agreed to proceed with the hearing without an attorney, and denied all of the violations. (Ex. 3G, Hearing Summary, pp. 1, 3). The State's evidence included the testimony of the deputies

who stopped petitioner and found cocaine in the vehicle he was driving (and of which he was the sole occupant). (Ex. 3G, Hearing Summary, pp. 4-5). Petitioner testified at the hearing wherein he acknowledged that after the new arrest, he bonded out of jail without getting his Conditional Release Officer's permission, and that he checked "no" on the July 1, 2013, WMR when asked whether he had been arrested or had any contact with law enforcement during the last month,. (Ex. 3G, Hearing Summary, p. 7). The hearing examiner determined that petitioner willfully violated Conditions 2(c), 3, 4(b) and 7, and that those were substantial conditions of his conditional release. (Ex. 3G, Hearing Summary, pp. 1, 7). The Commission agreed and revoked petitioner's conditional release based on the violations. The revocation was effective July 1, 2013. (Ex. 3H).

Petitioner sought judicial review of his conditional release revocation in state court by filing a petition for writ of habeas corpus in which he asserted that he was denied due process because (1) he never received a violation hearing, (2) the new criminal charge was nolle prossed, and (3) the remaining violations were not willful. (Doc. 12, Ex. 1). The state circuit court denied relief. (Ex. 4). Petitioner sought further review by filing a petition for writ of certiorari in the Florida First District Court of Appeal (First DCA). (Ex. 5). On March 3, 2016, the First DCA denied the

petition on the merits but without explanation. *Hornes v. Fla. Comm'n on Offender Review*, 215 So. 3d 1245 (Fla. 1st DCA 2016) (Table) (copy at Ex. 9).

Petitioner filed his federal habeas petition on March 20, 2016. (Doc. 1). The petition presents one claim: "Violation of clearly established federal law by the Supreme Court in <u>Wong Sun v. United States</u>, 83 S. Ct. 407 (1963), by illegal arrest caused Petitioner's illegal incarceration." (Doc. 1, p. 5). Respondent asserts that petitioner's claim is procedurally defaulted and without merit. (Doc. 12, pp. 9-14).

DISCUSSION

Petitioner provides these factual allegations to support his claim:

> The entire action of the Florida Commission on Offender Review (Fla. Parole Commission) in revoking Conditional Release and every proceeding in this case is a result of an illegal arrest by Escambia County, Florida police which the Honorable Circuit Judge Bergosh out [sic] at a suppression hearing in the First Judicial Circuit Court in Escambia County, Florida on September 23, 2013, which subsequently the State Attorney's Office nolle prosequi the possession of a controlled substance charge on September 26, 2013. See attached State Attorney's Nolle Prosequi at Exhibit A. The Conditional Release Violation and Revocation would never have happened absent the illegal arrest and thus are fruit of the poisonous tree and the Commission's revocation ruling is contrary to <u>Wong Sun v. United States</u>, 83 Sup. Ct. 407 (1963) and Petitioner's imprisonment is illegal. The State Courts have not followed federal law and have in fact ignored Petitioner's <u>Wong Sun</u> contentions in denying the Petition For Writ of Habeas Corpus and the Petition For Writ of Certiorari. The Respondent's position has been that you don't have to be found guilty of a new charge in order to be subject to a revocation of Conditional Release. However, the constitutional violation of Petitioner's 4th, 5th, and 14th amendment rights by the illegal arrest preceeded [sic] all of the basis used by the

Respondent to violate and thus revocate [sic] Petitioner's Conditional Release and return him to prison. It's Petitioner's position before this Court that when Judge Bergosh granted his suppression motion and threw out the illegally obtained evidence garnished by means of an illegal arrest the constitutional protections set forth by the Supreme Court under <u>Wong Sun</u> and the Fruit of the Poisonous Tree doctrine precluded Petitioner from suffering any further legal detriment in this case.

(Doc. 1, pp. 5-5a). Respondent's first defense is that petitioner's claim is procedurally defaulted because "Petitioner never raised any issue of illegal evidence in the circuit court, it was not properly raised in the First District Court of Appeal and it was properly not addressed before either court." (Doc. 12, p. 9).

A.      Exhaustion and Procedural Default

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 565 U.S. 266, 280, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012) (internal quotation marks and citations omitted). Respondent asserts that petitioner first raised the claim presented here in his certiorari petition in the First DCA, where he claimed he should not have been found guilty of the violations because the new arrest was determined to be illegal and unfounded. (Doc. 12, p. 8 (*citing* Doc. 12, Ex. 5, pp. 4-5)). In response to the First DCA's show cause order, the Commission asserted that the issue was not

raised below and, therefore, was not properly before the appellate court on certiorari review. (Doc. 12, Ex. 7). The Commission alternatively addressed the merits. (Doc. 12, Ex. 7, pp. 10-14). The First DCA ruled in a one-sentence opinion: "The petition for writ of certiorari is denied on the merits." *Hornes*, 215 So. 3d 1245, at *1 (copy at Doc. 12, Ex. 9).

The First DCA's opinion unequivocally states that it resolved petitioner's claim on the merits. Thus, there is no basis to find that the First DCA declined to address the merits and instead imposed a procedural bar. Respondent has not established that petitioner's claim is procedurally defaulted.

B.     Section 2254 Review of First DCA's Decision

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).  The First DCA's decision is considered an adjudication on the merits for purposes of 28 U.S.C. § 2254(d).  *See Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002)

("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases –
indeed, it does not even require awareness of our cases, so long as neither the
reasoning nor the result of the state-court decision contradicts them."). Where there
is no Supreme Court precedent on point, the state court's conclusion cannot be
contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding,
as to claim that counsel was *per se* ineffective in being absent from the courtroom
for ten minutes during testimony concerning other defendants: "Because none of
our cases confront the specific question presented by this case, the state court's
decision could not be contrary to any holding from this Court." (internal quotation
marks and citation omitted)). If the state court decision is contrary to clearly
established federal law, the federal habeas court must independently consider the
merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127
S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next
determines whether the state court "unreasonably applied" the governing legal
principles set forth in the Supreme Court's cases. The federal court defers to the
state court's reasoning unless the state court's application of the legal principle(s)
was "objectively unreasonable" in light of the record before the state court. *See
Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736,

159 L. Ed. 2d 683 (2004). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Richter*, 562 U.S. 86). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Petitioner emphasizes in his reply that he is not challenging the revocation decision on the ground that it is based on illegally obtained <u>evidence</u> (i.e., evidence obtained in violation of the Fourth Amendment). Rather, he is challenging the revocation on the ground that the violation proceeding flowed from his illegal arrest. (Doc. 14, pp. 1-2; *see also id*., p. 1 n.1 (petitioner's quotation from his state habeas petition wherein he claimed: "Petitioner would not have had any of the alleged violations if the Petitioner had not been arrested.")). Petitioner explains:

> Respondents mischaracterize Petitioner's 2254 claim to be that his conditional release revocation is grounded on illegal evidence. Not true. Illegal evidence is not a claim raised at any point. Fruit of the poisonous tree includes any detrimental effects curtailing one's liberty by incarceration resulting directly from illegal police action. Here, illegal evidence is not an issue. Petitioner's illegal incarceration is the issue, due to an illegal arrest.

(Doc. 14, p. 1). Petitioner argues that "the state court['s] denial of the instant claim is contrary to clearly established law as determined by the Supreme Court in <u>Wong Sun v. United States</u>, 83 S. Ct. 407 (1963)." (Doc. 1, pp. 1-2).

Although petitioner disavows that his claim involves a challenge to the evidence used to revoke his conditional release, the legal authority on which he relies – the *Wong Sun* decision and the fruit of the poisonous tree doctrine – relate only to the <u>use of evidence</u>. In particular, *Wong Sun* held that verbal evidence, like physical evidence, may be fruit of the poisonous tree and thus excluded in a criminal trial. *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The fruit of the poisonous tree doctrine is an <u>evidentiary</u> rule that operates in the context of criminal procedure. *See Wong Sun*, 371 U.S. at 484-88; *see also Costello v. United States*, 365 U.S. 265, 280, 81 S. Ct. 534, 5 L. Ed. 2d 551 (1961) ("[T]he 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a consequence of lawless official acts. . . ."). The doctrine is an extension of the exclusionary rule. *See Wong Sun*, 371 U.S. at 484-86 (discussing the nature and history of the exclusionary rule). As petitioner emphasizes that his claim does not involve a challenge to the evidence used to revoke his conditional release, *Wong Sun* would be inapposite and would not clearly establish that the revocation of his conditional release is unconstitutional.

Disregarding petitioner's erroneous reliance on *Wong Sun*, the substance of petitioner's claim is that the illegality of his arrest deprived the State of the opportunity to prosecute him for the conditional release violations. The United States Supreme Court has rejected this theory. In *United States v. Crews*, 445 U.S. 463, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980), the Court held:

> Insofar as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 865, 43 L. Ed. 2d 54 (1975); *Frisbie v. Collins*, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 421 (1886).FN20 The exclusionary principle of *Wong Sun* and *Silverthorne Lumber Co.* delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. Respondent is not himself a suppressible "fruit[.]"
>
> FN20 Cf. *United States v. Blue*, 384 U.S. 251, 255, 86 S. Ct. 1416, 1419, 16 L. Ed. 2d 510 (1966):
>
>> "Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book."

> In some cases, of course, prosecution may effectively be foreclosed by the absence of the challenged evidence. But this contemplated consequence is the product of the exclusion of specific evidence tainted by the Fourth Amendment violation and is not the result of a complete bar to prosecution.

445 U.S. at 474 and n20. Thus, taking petitioner's claim at face value and focusing, as petitioner insists, only on the <u>fact</u> of his allegedly unlawful arrest divorced from any evidence acquired or used therefrom, he is not entitled to habeas relief. No United States Supreme Court case clearly establishes that petitioner's allegedly illegal arrest renders his subsequent conditional release revocation unconstitutional.

Even if this court construed petitioner's claim, consistent with respondent's interpretation, as challenging the revocation decision on the ground that it was based on <u>evidence</u> (testimonial and documentary) tainted by petitioner's illegal arrest, the First DCA reasonably could have concluded that the acquisition and use of that evidence at the revocation proceeding does not render the Commission's decision unconstitutional. The United States Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998); *see id.* at 364 (holding that the exclusionary rule does not apply to parole revocation proceedings); *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) (same as to grand jury proceedings); *see also Herring*

*v. United States*, 555 U.S. 135, 141, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."). The First DCA's failure to extend the exclusionary rule to petitioner's conditional release revocation proceeding and its rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established Federal law.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, 197 L. Ed. 2d 1 (2017) (*quoting Miller-El*, 537 U.S. at 327).

The petitioner here cannot make that showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1) be DENIED.

2. That the clerk be directed to close the file.

3. That a certificate of appealability be DENIED.

At Pensacola, Florida this 31st day of August, 2017.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.